IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:18-cv-197-BO

EPIC GAMES, INC.,

    Plaintiff,

v.

THOMAS HANNAH,

    Defendant.

**FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

Plaintiff Epic Games, Inc. ("Plaintiff" or "Epic") and Defendant Thomas Hannah ("Defendant" or "Hannah") (together, the "Parties") have reached an agreement to settle the dispute between them, including without limitation, the above-captioned action, and have consented to the entry of this Final Judgment and Permanent Injunction on Consent (the "Consent Judgment") based on the following stipulated findings of fact and conclusions of law, which the Court hereby adopts for purposes of entry of this Consent Judgment.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. This Court has proper jurisdiction over the subject matter in this litigation under 28 U.S.C. §§ 1331 and 1367(a), and 18 U.S.C. 1832, *et. seq.* (DE 1, Complaint ¶ 13, DE 11, Answer ¶ 13)

2. This Court has personal jurisdiction over Defendant because Defendant consented to jurisdiction in this District and because Defendant resides in this District and has purposefully availed himself of the privileges of conducting activities and doing business in the State of North Carolina and in this District, by living and working here, thus invoking the benefits and protections of North Carolina's laws. This Court shall retain jurisdiction over Defendant for the

purpose of implementing and enforcing this Consent Order. (DE 1, Complaint ¶ 14, DE 11, Answer ¶ 14)

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because this is a District in which a substantial part of the events giving rise to Plaintiff's claims occurred, in which Defendant currently resides, and where he committed acts of trade secret misappropriation and breached his contract, which was entered into in this District and is governed by North Carolina law. (DE 1, Complaint ¶ 15, DE 11, Answer ¶ 15)

4. Epic, a Maryland corporation with its principal place of business in Wake County, North Carolina, is the creator of Fortnite®, a co-op survival and building action game. Epic is the owner of all the intellectual property related to Fortnite, including, without limitation, the trade secrets described below. (DE 1, Complaint ¶¶ 16-17, 23, DE 11, Answer ¶¶ 16-17, 23)

5. Fortnite was broadly released on July 25, 2017. Fortnite's free-to-play "Battle Royale" game mode was released on September 26, 2017. Since that time, Fortnite has become extremely popular in the United States and across the globe. With over 125 million users, it is Epic's most successful game yet. (DE 1, Complaint ¶ 18, 19)

6. The widespread enthusiasm Fortnite enjoys is due in part to the goodwill and reputation for quality that Epic built up in and around the game. An important part of this work, and of Fortnite's dramatic success, is the unexpected changes and surprises Fortnite's fans experience as the game, its story, and its environment continually evolve. This, along with the regular introduction of new content, including, without limitation, planned events, playing formats, themes, narratives, storylines, plot twists and developments, characters, player capabilities, "emotes" (i.e., dances or gestures a player's avatar can perform), cosmetics (e.g., outfits or "skins" for player avatars), weapons, "Easter eggs," changes to the Fortnite map and environment, and other secrets and surprises have kept Fortnite's tens of millions of registered

2

Case 5:18-cv-00197-BO   Document 23   Filed 12/21/18   Page 2 of 8

users excited about, and engaged with, the game while its fan base has continued to expand. (DE 1, Complaint ¶¶ 21-22)

7. Epic is the owner of all rights, title and interest in and to the Fortnite-related trade secrets at issue in this case, including, without limitation, proprietary and confidential business and technical information concerning planned events, playing formats, themes, narratives, storylines, plot twists and developments, characters, player capabilities, "emotes" (i.e., dances or gestures a player's avatar can perform), cosmetics (e.g., outfits or "skins" for player avatars), weapons, "Easter eggs," changes to the Fortnite map and environment, and other secrets and surprises (collectively, "Epic Trade Secrets" or "Epic's Trade Secrets"). (DE 1, Complaint ¶ 23, DE 11, Answer ¶ 23)

8. Epic has invested considerable time, effort, and financial resources to develop and protect Epic's Trade Secrets, and Epic's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of Epic's Trade Secrets. (DE 1, Complaint ¶ 24)

9. At all relevant times, Epic has taken reasonable measures to keep Epic's Trade Secrets secret by, including, without limitation: (i) maintaining them in secure working spaces; (ii) requiring a fully executed NDA for every person who might have access to Epic's Trade Secrets; (iii) limiting access to Epic's Trade Secrets to only those who are working on Fortnite or are part of senior management; and (iv) requiring (a) an assigned Epic user name, (b) password (with leading-edge industry standards for password requirements), and (c) multifactor authentication to access the computer system in which Epic's Trade Secret-related files are stored and/or live-streamed meetings during which Epic's Trade Secrets might be discussed or disclosed. (DE 1, Complaint ¶ 26, DE 11, Answer ¶ 26)

10. Defendant, an individual, is a resident and citizen of North Carolina. (DE 1, Complaint ¶ 12, DE 11, Answer ¶ 12)

11. Defendant was a contractor hired to work at Epic by Volt Workforce Solutions, a company that facilitates contingent staffing. (DE 1, Complaint ¶ 27, DE 11, Answer ¶ 27)

12. Defendant began his engagement at Epic on December 4, 2017 as a quality assurance tester for Fortnite. He was permitted access to not-yet-released versions of the game in order to generate bug reports, build stability reports, and generate feedback and data for Epic's Fortnite developers. (DE 1, Complaint ¶ 28, DE 11, Answer ¶ 28)

13. Defendant entered into a Temporary Personnel Nondisclosure Agreement dated November 27, 2017 (the "NDA"), in which Defendant acknowledged that during his time at Epic he might "learn certain information about Epic and its business," which information Epic desired to protect. (DE 1, Complaint ¶ 30, DE 11, Answer ¶ 30)

14. Under the NDA, Defendant agreed that Epic would provide him with "certain information that is confidential, proprietary, and not generally available to the public ("Confidential Information"), and agreed that this "Confidential Information provided by Epic was developed through substantial expenditures of time, effort, and money and constitutes valuable and unique property of Epic." (DE 1, Complaint ¶ 31, DE 11, Answer ¶ 31)

15. Defendant further agreed to: "keep in strict confidence and ... not directly or indirectly disclose, furnish, disseminate, make available, or, except in the course of [his work at Epic], use any Confidential Information." (DE 1, Complaint ¶ 32, DE 11, Answer ¶ 32)

16. The NDA is a valid and binding agreement between Epic and Defendant and was supported by adequate consideration. (DE 1, Complaint ¶ 36, DE 11, Answer ¶ 36)

17. During his employment, Defendant attended Fortnite team meetings. On March 16, 2018, Defendant attended a livestream of a Fortnite team meeting concerning the

4

development of upcoming seasons of Fortnite. The meeting took place at Epic's main building in Cary and was livestreamed on a secure streaming channel to external offices, including the office where Defendant worked. (DE 1, Complaint ¶ 50, DE 11, Answer ¶ 50)

18. Meeting participants were given a specific link and also required to login using their Epic username and password as well as use multi-factor authentication. Invitations to this meeting (and others like it) were sent only to the Fortnite team— not to general Epic personnel. (DE 1, Complaint ¶ 51, DE 11, Answer ¶ 51)

19. Certain of Epic's Trade Secrets were discussed during the March 16, 2018 meeting and Defendant had access to them as a result. (DE 1, Complaint ¶ 52, DE 11, Answer ¶ 52)

20. Defendant resigned from Epic on April 4, 2018. (DE 1, Complaint ¶ 53, DE 11, Answer ¶ 53)

21. On April 24, 2018, a Reddit user named "internetadam" posted a message entitled "SPOILERS for Season 4 Battle Pass & Meteor" on a publicly available website. (DE 1, Complaint ¶ 54, DE 11, Answer ¶ 54)

22. "internetadam" is Adam DiMarco. (DE 1, Complaint ¶ 55, DE 11, Answer ¶ 55)

23. In the April 24, 2018 post in which he disclosed certain of Epic's Trade Secrets, DiMarco mentioned a source who "refused to be named." (DE 1, Complaint ¶ 57, DE 11, Answer ¶ 57)

24. The source DiMarco referred to in the April 24, 2018 post was Defendant. (DE 1, Complaint ¶ 58, DE 11, Answer ¶ 58)

25. Epic did not authorize Defendant to disclose any of Epic's Trade Secrets to DiMarco. (DE 1, Complaint ¶ 80, DE 11, Answer ¶ 80)

5

26. Defendant disclosed some of Epic's Trade Secrets to DiMarco, who published them online, ending the suspense and spoiling surprises that had been planned for months by Epic's Fortnite team in the run up to Season 4. (DE 1, Complaint ¶ 80, DE 11, Answer ¶ 80)

27. Defendant's disclosure of Epic's Trade Secrets and Confidential Information (as that term is defined in his NDA) constitutes misappropriation of trade secrets in violation of both the North Carolina Trade Secrets Protection Act, N.G.G.S. § 66-152, *et seq.* ("NCTSPA"); and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), violates the terms of the NDA, and is the result of a civil conspiracy in violation of common law.

28. Defendant's violations of the NCTSPA and DTSA, and North Carolina law have caused, and continue to cause, Epic great and irreparable injury that cannot be fully compensated or measured in money. Epic has no adequate remedy at law for Defendant's wrongful conduct because Epic's Trade Secrets are unique and valuable property that have no readily determinable market value and Defendant's misappropriation constitutes an interference with Epic's goodwill and customer relations.. Accordingly, the Parties consent to the below Permanent Injunction and enter into this Consent Judgment voluntarily after consulting with counsel and waive any rights to appeal from it.

It is hereby **ORDERED, ADJUDGED,** and **DECREED** that:

29. Defendant, Thomas Hannah, along with his agents, representatives, partners, joint venturers, servants, employees, and all those persons or entities acting in concert or participations with him will immediately destroy all copies of any of Epic's Trade Secrets and Confidential Information in his possession, custody, or control, and is **PERMANENTLY ENJOINED and RESTRAINED** from revealing any of Epic's Trade Secrets and Confidential Information.

For the purposes of this paragraph 29 only, the term "Epic" includes all of Epic's subsidiaries and affiliated companies.

30. No bond or posting of security is required of the Parties in connection with the entry of this Consent Judgment.

31. Plaintiff and Defendant acknowledge that they have knowingly and voluntarily entered into this Consent Judgment after reviewing the same with their counsel or having had ample opportunity to consult with counsel. Plaintiff and Defendant understand the undertakings, obligations, and terms of this Consent Judgment.

32. Except as to Defendant's obligations set forth in this Consent Judgment, Plaintiff's claims against Defendant in this Action, and any claims that could have been asserted in this Action, are hereby dismissed <u>with prejudice</u>.

33. This Consent Judgment is final and Plaintiff and Defendant each hereby waive their rights to appeal from this order.

34. Nothing in this Consent Judgment precludes Plaintiff or Defendant from asserting any claims or rights that arise after Defendant's agreement to this Consent Judgment or that are based upon any breach of, or the inaccuracy of, any representation or warranty made by Defendant or Plaintiff in this Consent Judgment, or in the Settlement Agreement reached by the Parties.

35. Nothing in this Consent Judgment precludes Plaintiff or Defendant from asserting any claims or rights against any third party.

36. Defendant waives any objection under Federal Rule of Civil Procedure 65(d) (pertaining to injunctions) to paragraph 29, above.

37. This Court shall retain jurisdiction over this matter to enforce a violation of this Consent Judgment's terms. If any such violation occurs, the Court shall award, (a) without

7

Case 5:18-cv-00197-BO   Document 23   Filed 12/21/18   Page 7 of 8

regard to proof of actual damages, liquidated damages of Five Thousand Dollars ($5,000); as well as (b) injunctive relief enjoining any further breach of this Consent Judgment, or such modifications to the present Consent Judgment as the Court deems appropriate; (c) attorneys' fees, costs and disbursements, as determined by the Court; and (d) such other relief as the Court deems just and proper.

IT IS SO ORDERED this 20 day of December, 2018.

Terrence W. Boyle
The Honorable Judge Terrence W. Boyle
Chief United States District Judge

**CONSENTED TO:**

| **FOR THE PLAINTIFF:** | **FOR THE DEFENDANT:** |
|---|---|
| /s/Christopher M. Thomas | /s/ Andrea Winters Morelos |
| Christopher M. Thomas (N.C. Bar No. 31834) | Andrea Winters Morelos (N.C. Bar No. 30696) |
| Email: christhomas@parkerpoe.com | Email: a.morelos@guirguislaw.com |
| Catherine R.L. Lawson (N.C. Bar No. 44574) | Guirguis Law |
| Email: catherinelawson@parkerpoe.com | 434 Fayetteville St., Suite 2140 |
| Parker, Poe, Adams, & Bernstein LLP | Raleigh, North Carolina 27601 |
| PNC Plaza | Telephone: (919) 832-0500 |
| 301 Fayetteville Street, Suite 1400 (27601) | Facsimile: (919) 246-9500 |
| P.O. Box 389 | *Attorney for Defendant* |
| Raleigh, North Carolina 27602-0389 | |
| Telephone: (919) 835-4626 | |
| Facsimile: (919) 834-4564 | |
| *Attorneys for Plaintiff Epic Games, Inc.* | |